# IN THE COURT OF APPEALS OF IOWA

————————————

No. 26-0321
Filed May 13, 2026

————————————

**In the Interest of F.M., Minor Child,**

**T.M., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Monroe County,
The Honorable Richelle Mahaffey, Judge.

————————————

**AFFIRMED**

————————————

T.M., Centerville, Self-represented appellant.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Dusty L. Clements of Clements Law & Mediation, Newton, attorney
for minor child.

Samuel K. Erhardt, Ottumwa, guardian ad litem
for minor child.

————————————

Considered without oral argument
by Schumacher, P.J., and Ahlers and Badding, JJ.
Opinion by Schumacher, P.J.

1

**SCHUMACHER, Presiding Judge.**

The district court terminated the mother's parental rights to F.M., born in 2010, pursuant to Iowa Code section 232.116(1)(f) (2025).[1] The mother appeals, claiming the court erred by terminating her parental rights "due to the closeness of the parent-child relationship"; the court's order contains "contradictory findings regarding the child's wishes"; the court failed to acknowledge the mother's "three consecutive clean drug tests" and other "completed milestones"; the termination order is "void" because "the court lacked subject matter jurisdiction from the inception of the case"; ineffective assistance of counsel by three attorneys; "specific acts of misconduct" by four caseworkers; the child's removal in 2022 was improper for several reasons; and the Iowa Department of Health and Human Services failed to provide reasonable efforts toward reunification.

At the termination hearing, the mother testified F.M. was adjudicated a child in need of assistance "over a lie"—a caseworker's "hunch that I was a drug addict."[2] In any event, the mother did not believe "a parent on methamphetamine" was "unfit," explaining, "I've seen parents work hard and take care of their kids on methamphetamine." But she maintained that she had never used methamphetamine in her "entire lifetime." In our 2022 opinion affirming the mother's appeal of the dispositional order in this case, we noted:

> The mother tested positive for methamphetamine in January [2022] at levels that the [caseworker] testified indicated drug use multiple times a day. One of the [mother's] children informed a provider that the child witnessed the mother use methamphetamine. One of the children also

---

[1] The father's parental rights were also terminated; he does not appeal.

[2] She further maintained that "Judge Owens threw that [positive] test out because it was conducted in a hotel room with a lady that didn't wash her hands."

> reported to [the department] that the child had found needles and a clear substance in a bedroom within the family home.

*In re C.M.*, No. 22-1212, 2022 WL 17481401, at *2 (Iowa Ct. App. Dec. 7, 2022).

The department caseworker testified, "Unfortunately, there continues to be concerns regarding [the mother]'s substance use, mental health, and stability, as well as her noncompliance throughout this case with the services recommended." The caseworker reported the same concerns that led to the child's removal in 2022 still existed at the time of the termination hearing. The case languished due in part to a guardianship with the child's adult sister that was attempted but did not work out. F.M., who was fifteen years old at the termination hearing, was no longer willing to participate in visits with the mother.[3] He was "thriving" in his foster placement, and he requested that parental rights be terminated so he could be adopted.

Aside from requesting additional visits—which F.M. was not willing to participate in—the mother asked for F.M. to have an updated mental-health evaluation because she believed he was being "brainwashed" by his foster placement. The department declined the mother's request, reasoning that the child was not on any medication for a mental-health condition, and his therapist did not believe the mother's claim to be true.

The mother testified she had not participated in substance-use treatment because her substance-use evaluations included "no recommendations" for treatment. The mother acknowledged that she had never participated in a urine analysis or hair stat test at the request of the

---

[3] The mother provided no financial support for the child, and she did not attend his activities.

department "during the four years that this case has been opened."[4] She claimed she "didn't know about" the court's May 2025 order that she participate in a drug screen "prior to the next court date," explaining, "My lawyer never showed me that." And she stated that when the caseworker asked her to do a drug test "last week," she was "out of town." The mother further maintained that the court told her to participate in mental-health counseling due to "the tattoo on [her] neck." Nonetheless, the mother testified she had started therapy, but she had not signed releases for the department to confirm her participation.

The child's attorney requested termination of parental rights. The mother reasoned that F.M. didn't "want to come home" due to the "unfair[ness]" of the system. She asked the court "to see how this whole case ha[d] been built on lies." She maintained, "I've already done what I was supposed to do that the Court wanted me to do," and she requested F.M. be returned to her custody "today."

The district court terminated the mother's parental rights, noting her "substance use disorder, mental health issues, and housing instability remain unaddressed." The court further found that the mother's "resistance to cooperation, and denial regarding her need to change are practically the same as they were in January of 2022." The court acknowledged a bond between the mother and child. However, as the caseworker observed, "They are bonded," but "the bond has been strained through the years of [the department's] involvement and the trauma that has occurred." As the court noted, "[F.M.] has been through a shocking amount of change over the last four years. [F.M.] is remarkable. Despite the upheaval, [F.M.] has excelled in

---

[4] The mother maintained that she had completed other drug tests, but she did not sign releases for the department to confirm whether her reports were accurate.

school, sports, and has been a loving family member in his foster home. [F.M.] clearly desires, and deserves, to achieve permanency and stability." "Children simply cannot wait for responsible parenting," *In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018) (citation omitted), and this child has been waiting for four years. We concur with the court that F.M. should not have to remain in limbo any longer for a safe and permanent home.

On our de novo review, *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010), we carefully examined the record, the briefs of the parties, and the court's ruling. We approve the reasons and conclusions in the termination order. We further note that many of the issues raised in the mother's petition on appeal are not preserved for review and are not adequately supported by the record. We affirm.

**AFFIRMED.**